UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILLARD WAYNE BAKER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DR. SHAHBAZIAN,<br><br>　　　　Defendant. | Case No.  1:24-cv-01279-HBK (PC)<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE[1]<br><br>(Doc. No.  19)<br><br>ORDER STAYING CASE AND REFERRING CASE TO EARLY ADR<br><br>OPT OUT DATE: AUGUST 13, 2025 |

Pending before the Court is Defendant's motion to dismiss filed on February 18, 2025. (Doc. No. 19, "Motion").  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant seeks dismissal of Plaintiff's state law claim for intentional infliction of emotional distress.  Plaintiff filed an opposition (Doc. No. 20), and Defendant filed a reply (Doc. No. 21).  For the reasons set forth below, the undersigned denies Defendant's Motion without prejudice.

## I. BACKGROUND

**A. Procedural History**

Plaintiff Millard Wayne Baker is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983.  (Doc. Nos. 8, 10).  On November 15,

---

[1] Both parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1).  (Doc. No. 25).

1

1  2024, the Court issued a screening order finding that Plaintiff's initial Complaint stated a
2  cognizable Eighth Amendment deliberate medical indifference claim, as well as state law claims
3  for negligence and intentional infliction of emotional distress ("IIED") against Defendant
4  Shahbazian, but no other cognizable claims. (Doc. No. 9). On November 21, 2024, Plaintiff filed
5  a First Amended Complaint. (Doc. No. 10, "FAC"). On November 25, 2024, Plaintiff filed a
6  Notice of Voluntary Dismissal ("Notice"), indicating he filed the FAC prior to receiving the
7  November 15, 2024 Screening Order and stating that he wishes to proceed on the claims against
8  Defendant Shahbazian found cognizable in the Court's November 15, 2024 Screening order and
9  dismiss the remaining claims and Defendants. (Doc. No. 11). Plaintiff also requested to proceed
10 on his FAC rather than his initial Complaint, which contained relatively minor changes to the
11 initial Complaint, but was otherwise substantively identical. (*Id*.).

12 On December 3, 2024, the Court deemed the FAC the operative pleading and, pursuant to
13 Plaintiff's Notice, allowed him to proceed with his Eighth Amendment deliberate medical
14 indifference, negligence, and IIED claims against Defendant Shahbazian, while dismissing all
15 other claims by operation of law. (Doc. No. 12). After service, Defendant filed the instant
16 Motion.

**B. Summary of Operative Complaint**

18 Plaintiff, a prisoner formerly housed at North Kern State Prison, brings this action against
19 Defendant Dr. Shahbazian, alleging violations of his Eighth Amendment right to adequate
20 medical care, as well as negligence and IIED, arising from the abrupt discontinuation of his
21 prescribed psychotropic medication, Effexor[2] as set forth in his First Amended Complaint . (Doc.
22 No. 10, "FAC"). Plaintiff has attached to the FAC several exhibits, including a copy of his

---

[2] The Court takes judicial notice that Effexor is the proprietary name for Venlafaxine hydrochloride, "a phenylethylamine-derivative antidepressant and anxiolytic agent that acts as a serotonin- and noradrenaline-reuptake inhibitor (SNRI)." Campagne, Daniel M., Venlafaxine and Serious Withdrawal Symptoms: Warning to Drivers, Medscape General Medicine, 7.3 (2005): 22. Effexor is used primarily to treat major depressive disorder, with labeled uses including generalized anxiety disorder and social phobia. *Id*. Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice on its own or at the request of any party at any stage of the proceedings. Fed. R. Evid. 201(c)–(d).

1  November 8, 2023 health care grievance; copies of his prison medical records; and materials
2  describing the symptoms of Effexor withdrawal. (*Id*. at 10–21). The following facts are
3  presumed to be true at this stage of the litigation.
4        Plaintiff had been prescribed Effexor daily for a year to manage his mental health
5  condition. (*Id*. at 3). However, Defendant stopped Plaintiff's prescription abruptly without prior
6  consultation or justification a day after Plaintiff had spent two-weeks on suicide watch. (*Id*. at 3-
7  4). Despite repeated attempts by medical staff to contact Defendant for reinstatement of
8  Plaintiff's medication, Defendant failed to act, leaving Plaintiff without the necessary treatment
9  for weeks. (*Id*.). Specifically, a nurse from B Yard, who knew of Plaintiff's concerns, made
10 multiple attempts to contact Defendant by emails and phone calls on Plaintiff's behalf, but
11 Defendant did not respond to the emails. (*Id*.). Plaintiff also went to the medical line daily for 10
12 to 14 days to refill his Effexor prescription but was unsuccessful. (*Id*.).
13       During this period, Plaintiff suffered severe withdrawal symptoms, including intense
14 migraines, nausea, confusion, suicidal ideation, mood instability, and motor impairment as a
15 direct result of Defendant's inaction. (*Id*. at 3–4). Plaintiff seeks compensatory damages of
16 $200,000 against Defendant for pain and suffering, as well as punitive damages totaling
17 $200,100. (*Id*. at 9).
18       **II. APPLICABLE LAW AND ANALYSIS**
19     **A. Rule 12(b)(6)**
20       A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the
21 legal sufficiency of a claim." *Conservation Force v. Salazar,* 646 F.3d 1240, 1242 (9th Cir.
22 2011). Dismissal for failure to state a claim is proper if there is a "lack of a cognizable legal
23 theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.*; *see*
24 *also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, the
25 complaint must have sufficient facts to state a facially plausible claim to relief). In deciding a
26 motion under Rule 12(b)(6), the court accepts as true all well-pled factual allegations in the
27 complaint and determines whether the factual allegations are sufficient to state a right to relief
28 above the speculative level. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *see also Nw. Envtl. Def. Ctr.*

1  *v. Brown,* 640 F.3d 1063, 1070 (9th Cir. 2011) (court accepts as true all material allegations in the
2  complaint, as well as any reasonable inferences to be drawn from them).  Though courts construe
3  pro se filings liberally and afford the pro se litigant the benefit of any doubt, a pro se complaint
4  still must satisfy these standards.  *Hebbe v. Pliler*, 627 F.3d 338, 341–43 (9th Cir. 2010).

5        A court's determination that a case proceeds past § 1915A initial screening does not
6  preclude granting a later-filed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).
7  *Forte v. Hughes*, 2014 WL 5603788, *1 (E.D. Cal. Nov. 3, 2014) (noting a screening order does
8  not rule on the merits of the proposed action but instead evaluates whether the claim is cognizable
9  and is not a substitute for a 12(b)(6) motion); *see also Teahan v. Wilhelm*, 481 F.Supp.2d 1115,
10 1119 (S.D. Cal. March 28, 2007) (noting an initial § 1915A screening does not preclude a later
11 dismissal under Fed. R. Civ. P. 12(b)(6)).

12       "Where a motion to dismiss is granted, a district court must decide whether to
13 grant leave to amend.  Generally, the Ninth Circuit has a liberal policy favoring amendments and,
14 thus, leave to amend should be freely granted." *Winebarger v. Pennsylvania Higher Educ.*
15 *Assistance Agency*, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019) (citation omitted).  However,
16 where leave to amend would be futile, because "the allegation of other facts consistent with the
17 challenged pleading could not possibly cure the deficiency," leave to amend may be denied.
18 *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

19     **B.  IIED**

20       There are three elements of an IIED claim in California: "(1) extreme and outrageous
21 conduct by the defendant with the intention of causing, or reckless disregard of the probability of
22 causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and
23 (3) actual and proximate causation of the emotional distress by the defendant's outrageous
24 conduct." *Lawler v. Montblanc N. Am.*, LLC, 704 F.3d 1235, 1245 (9th Cir. 2013) (citation
25 omitted).  Conduct is "outrageous" or "extreme" where it "exceed[s] all bounds of that usually
26 tolerated in a civilized society." *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991)
27 (internal quotation and citation omitted).  Defendant moves to dismiss Plaintiff's IIED claim,
28 asserting that Plaintiff has failed to sufficiently plead each of the three elements.  The Court

addresses each of Defendant's arguments in turn.

Defendant contends that there are no allegations in the FAC indicating that Defendant's conduct was intentional, reckless, or constituted extreme and outrageous behavior when he "stopped Plaintiff's medication." (Doc. 19 at 5–6). Defendant further points out that Plaintiff's medication was restarted only two days after Plaintiff submitted a grievance, undermining any claim that Defendant's conduct could be considered so extreme as to exceed all bounds tolerated in a civilized society. (*Id*. at 6).

As Plaintiff's psychiatrist, Shahbazian owed Plaintiff a duty of care to provide adequate psychiatric care and medication management, particularly given the seriousness of Plaintiff's mental health condition. *See Kockelman v. Segal*, 61 Cal. App. 4th 491, 501 (1998) ("California courts have recognized that psychiatrists owe a duty of care, consistent with standards in the professional community, to provide appropriate treatment for potentially suicidal patients"). The Complaint alleges that Defendant, who was responsible for ensuring Plaintiff was on his medications, abruptly stopped the medication without explanation or consultation just days after Plaintiff had spent weeks on suicide watch. Liberally construed, Defendant abruptly terminated Plaintiff's medication without any reason. The medication had been effectively treating Plaintiff's severe depression. The sudden discontinuation resulted in Plaintiff experiencing severe withdrawal symptoms, including, *inter alia*, severe migraines, nausea, depression, nightmares and suicidal ideation. (Doc. No. 10 at 3–4). While there are no facts to suggest that Defendant intended to cause this kind of emotional distress, by forcing Plaintiff to suddenly stop taking Effexor, the facts sufficiently allege that Defendant exhibited reckless disregard for the high probability that Plaintiff would suffer extreme emotional distress. *See Ross v. Creel Printing & Publishing Co.*, 100 Cal. App. 4th 736, 744–45 (2002) (IIED can be based on the "reckless disregard of the probability of causing[ ] severe emotional distress"); *see also Thomas v. Hickman*, 2007 WL 470611, *15 (E.D. Cal. 2007) ("It is enough that defendant devoted little or no thought to the probable consequences of his conduct.") (internal quotation marks omitted).

As to the fact that Plaintiff's medication was restarted only two days after Plaintiff submitted a grievance—which Defendant argues undermines any suggestion of egregious

5

conduct—the FAC indicates that Plaintiff was without the medication for at "over 10-14 days." (Doc. No. 10 at 4). Further, the allegations in the FAC suggest that another psychiatrist was responsible for restarting Plaintiff's Effexor. (*See* Doc. No. 10 at 12).[3] During the period when medication had stopped, a nurse attempted to contact Defendant by telephone and email to refill his prescription at Plaintiff's request but Defendant did not respond. (*Id*. at 4). Plaintiff also visited the medical line daily to refill his Effexor prescription but to no avail. (*Id*.). Liberally construing the operative complaint and drawing any reasonable inference in favor of the Plaintiff, as the Court must do at this stage of the process, the Court finds that averments sufficiently allege that Defendant was responsible for ensuring that Plaintiff was receiving his medication, abruptly stopped the medication without reason, and was aware of Plaintiff's medical needs during this time. Thus, Defendant's conduct may be considered extreme and outrageous given the probability that Plaintiff would suffer severe emotional distress without his medication. *See Richards v. Essick*, 2023 WL 122397, at *3 (N.D. Cal. Jan. 6, 2023) (finding "the allegations underlying the IIED claim plausibly establish that County jail staff knew of a need for immediate medical care."). Therefore, the FAC sufficiently alleges the first element of an IIED claim.

      Second, Defendant asserts that Plaintiff's alleged emotional distress—including migraines, nausea, mood swings, suicidal thoughts, and sleep disturbances—fails to meet the threshold required for an IIED claim. (Doc. 19 at 6–7). Defendant contends that the symptoms described do not satisfy the requisite legal standard as they lack "substantial quality or enduring quantity" beyond what a reasonable person in a civilized society should be expected to endure. (*Id*. at 7). The Court disagrees. Plaintiff's allegations of suicidal ideation and depression are more than sufficient to overcome a Rule 12(b)(6) challenge. *See, e.g., Elena v. Reliance Standard Life Ins. Co*., 2022 WL 1174107, at *6 (S.D. Cal. Apr. 20, 2022) (finding the plaintiff's evidence of depression and suicidal ideation was sufficient to withstand the defendants' motion for summary judgment on IIED claim); *see also, e.g., Doty v. County of Lassen*, 37 F. 3d 540, 546 (9th Cir. 1994) (a heightened suicide risk constitutes a serious medical need). Further, Plaintiff

---

[3] Noting "that another psychiatrist had restarted [Plaintiff] medication on November 10, 2023."

avers the medication was stopped just days after he was on suicide watch. Therefore, the FAC adequately pleads the second element necessary to establish an IIED claim.

Finally, Defendant argues that Plaintiff has failed to plead facts demonstrating that Defendant was directly responsible for discontinuing Plaintiff's medication or intentionally denying its reinstatement. (Doc. 19 at 8). As explained *supra*, the FAC allegations must be liberally construed and accepted as true at the pleading stage. Here, the allegations sufficiently allege that Defendant was responsible for ensuring that Plaintiff received his medication and exhibited reckless disregard for the high probability that Plaintiff would experience extreme emotional distress by failing to renew Plaintiff's Effexor prescription. Thus, the Court finds that the FAC adequately alleges that Plaintiff's emotional distress was proximately caused by Defendant's inaction. Therefore, the FAC sufficiently alleges the third element required to establish an IIED claim.

**CONCLUSION**

Liberally construing Plaintiff's FAC and resolving all doubts in favor of Plaintiff as the non-moving party, the Court finds that Plaintiff adequately alleges an IIED claim against Defendant. Accordingly, the Court denies Defendant's motion without prejudice.

Nonetheless, before requiring Defendant file a answer to the operative complaint, the Court will refer this case to early Alternative Dispute Resolution (ADR) so that the parties may to try resolve this case. *See* Local Rule 270. In appropriate cases, defense counsel from the California Attorney General's Office have agreed to participate in early ADR. No claims, defenses, or objections are waived by the parties' participation.

Attempting to resolve this matter early through settlement would save the parties the time and expense of engaging in lengthy and costly discovery and preparing substantive dispositive motions. Therefore, the Court STAYS this action to allow the parties an opportunity to investigate Plaintiff's claims, meet and confer, and engage in settlement discussions—or agree to participate in an early settlement conference conducted by a magistrate judge. If, after further investigation of Plaintiff's claims and meeting and conferring, any party determines that a

1  settlement conference would be unproductive, that party may opt out of early settlement
2  proceedings.

3  Accordingly, it is **ORDERED**:

4  1. The Court **DENIES** Defendant's Motion to Dismiss (Doc. No. 19).

5  2. This action will remain **STAYED until further order** to allow the parties an
6  opportunity to settle their dispute.  Defendant may, but is not required to, file an
7  answer during the stay period.  The parties shall not engage in formal discovery until
8  the Court issues a Scheduling and Discovery Order.

9  3. **No later than August 13, 2025**, the parties shall file a notice if they object to
10  proceeding to an early settlement conference or if they believe that settlement is not
11  currently achievable.

12  4. If neither party has opted out of settlement by the expiration of the objection period,
13  the Court will assign this matter by separate Order to a United States Magistrate
14  Judge, other than the undersigned, for conducting the settlement conference.

15  5. If the parties reach a settlement prior to the settlement conference, they SHALL file a
16  Notice of Settlement as required by Local Rule 160.

Dated:   May 12, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE