UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILLARD WAYNE BAKER, JR.,<br>Plaintiff,<br>v.<br>R. SHAHBAZIAN,<br>Defendant. | Case No. 1:24-cv-01279-HBK (PC)<br>ORDER GRANTING DEFENDANT SHAHBAZIAN'S EXHAUSTION-BASED MOTION FOR SUMMARY JUDGMENT[1]<br>(Doc. 35) |

Pending before the Court is Defendant R. Shahbazian's exhaustion-based motion for summary judgment, filed on November 18, 2025. (Doc. 35). Plaintiff opposed the motion and Defendant replied. (Docs. 44, 46, 47, 49). For the reasons below, the Court grants the motion.

BACKGROUND

Plaintiff Millard Wayne Baker, Jr., a pro se prisoner, proceeds on the screened First Amended Complaint ("FAC") against Defendant Dr. Shahbazian, asserting an Eighth Amendment deliberate medical indifference claim and state law claims for negligence and intentional infliction of emotional distress. (Doc. 10, 12).

The FAC alleges that Defendant abruptly discontinued Plaintiff's Effexor prescription shortly after Plaintiff spent weeks on suicide watch. (Doc. 10 at 3–4). Plaintiff alleges that he

[1] The parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1). (Doc. 25).

stopped receiving Effexor on November 1, 2023, and experienced withdrawal symptoms including depression, migraines, impaired motor skills, nausea, mood swings, confusion, suicidal thoughts, insomnia, and nightmares. (*Id.* at 3–4, 10).[2] Plaintiff sought treatment daily for 10-14 days. (*Id.* at 4). An unnamed nurse attempted to schedule an appointment with Defendant and emailed him about restarting the prescription, but Defendant did not respond. (*Id.*). Another doctor eventually renewed the prescription. (*Id.* at 3).

On November 8, 2023, Plaintiff filed an "emergency 602" healthcare grievance, Log No. NKSP HC 23002014. (*Id.* at 10 (Ex. 1)). He stated that his Effexor had been stopped without warning for seven days, causing headaches, loss of balance, insomnia, delayed motor function, and serious anxiety. (*Id.*) He requested that his medication be restored and stated he had asked a nurse to send emails and had submitted a medical slip without success. (*Id.*). Plaintiff characterized the denial of his medication as unfair and negligent, stated he intended to pursue litigation, and requested his medication "ASAP." (*Id.*).

The grievance was accepted and assigned to Mental Health. (*Id.*). Defendant interviewed Plaintiff on December 6, 2023, and the Chief of Mental Health reviewed the grievance. (*Id.*). Although both the "intervention" and "no intervention" boxes on the grievance form were marked, the attached institutional-level response, dated January 18, 2024, identified the disposition as "no intervention." (*Id.* 10, 12). It stated that Plaintiff's grievance did not meet the definition of staff misconduct and that another psychiatrist had restarted Plaintiff's medication on November 10, 2023. (*Id.* at 12). The response further advised Plaintiff that, if dissatisfied, he was required to seek headquarters-level review to exhaust administrative remedies. (*Id.* at 13).

The FAC includes a completed Section C appeal dated February 18, 2024. Plaintiff stated he was dissatisfied because the institution had neither admitted nor denied that his medication had been "cut off," information he believed necessary to "exhaust this 602" and bring suit before this Court. (*Id.* at 11). Plaintiff also alleged that he filed a claim with the Government Claims Board

---

[2] The precise date on which Plaintiff stopped receiving Effexor is unclear. His November 8, 2023 grievance states that he had been without the medication for seven days, while attached medical records list October 2, 2023, as the prescription end date. (Doc. 10 at 10, 15, 19). Because the precise date is immaterial to this motion, the Court assumes the grievance's account is accurate.

in February 2024. (*Id.* at 5).

PARTIES' POSITIONS

A. Defendant's Exhaustion-Based Motion for Summary Judgment

Defendant Shahbazian moved for summary judgment based on Plaintiff's alleged failure to exhaust administrative remedies on November 18, 2025. (Doc. 35). The motion includes a memorandum of points and authorities, a *Rand* warning, a statement of undisputed facts, and the declaration of K. Martin, Associate Director of the Health Care Correspondence and Appeals Branch ("HCCAB"). (Docs. 35-1–35-4). Martin's declaration attaches Plaintiff's Health Care Appeals and Risk Tracking System ("HCARTS"), grievance history, and Grievance No. NKSP HC 23002014. (Doc. 35-4, Exs. A, B).

Defendant advances two grounds for summary judgment. First, Plaintiff's grievance did not identify Defendant or otherwise indicate that Defendant was responsible for discontinuing Plaintiff's medication; thus, it did not provide notice of Plaintiff's claims against Defendant. (Doc. 35-1 at 6–7). Second, Plaintiff did not seek headquarters-level review before filing the operative complaint, as required by regulation to exhaust administrative remedies. (*Id.* at 7).

Martin declares that HCCAB received no headquarters-level appeal of Plaintiff's grievance. (Doc. 35-4 at 3). Plaintiff's HCARTS history identifies the disposition as "No Intervention" and reflects no headquarters-level appeal. (*Id.* at 8–9). Defendant also submitted the institutional copy of the grievance, which has both "intervention" and "no intervention" marked and contains no completed Section C appeal. (*Id.* at 25–26).

B. Plaintiff's Opposition to Defendant's Exhaustion-Based MSJ

Plaintiff filed an opposition and supporting declaration on February 2, 2026.[3] (Docs. 46–47). He also submitted exhibits consisting of mental health and medical records, medication records and consent forms, correspondence, emails, suicide watch discharge documentation, a grievance, medication information , and records concerning the alleged grant of his grievance. (Doc. 44, Exs. A–I). Plaintiff did not respond to Defendant's Separate Statement of Undisputed

[3] Plaintiff's opposition was untimely. The Court nevertheless considers it on the merits in the interest of justice.

Material Facts.

Plaintiff contends that he was not required to seek further review because another psychiatrist restarted his medication while the grievance was pending and Defendant later apologized. (Doc. 46 at 2). Plaintiff asserts that, during a December 6, 2023 interview, Defendant said he would "grant" the grievance[4] and marked the "intervention" box. (*Id.* at 3). Plaintiff therefore believed that he "had no reason to [pursue] further appeal action to a higher level." (*Id.* at 2). Plaintiff likened a grievance appeal in his circumstances to appealing a court case after prevailing. (*Id.*). Plaintiff further maintains that someone later marked the "no intervention" box after the "intervention" box had been marked. (*Id.* at 3). In Plaintiff's view, he did not need to pursue headquarters-level review because he had obtained a favorable result. (*Id.*).

Plaintiff's exhibits include a November 10, 2023 note from Dr. Michael Ferguson directing that Plaintiff resume Effexor at his prior dosage. (Doc. 44 at 11–12). They also include Defendant's note from a later clinical visit, which states that Defendant addressed Plaintiff's November 8, 2023 health care grievance seeking reinstatement of his psychotropic medication. Defendant noted that Plaintiff's medication had already been restarted and that the grievance therefore appeared moot. Defendant further stated that he would complete the grievance paperwork by noting that Plaintiff's request had been granted. (*Id.* at 12–13.) The treatment plan likewise states: "Complete the patient's 602 paperwork." (*Id.* at 13.)

Plaintiff also submitted another copy of the grievance form showing both the "intervention" and "no intervention" boxes marked. (*Id.* at 9).

C. Defendants' Reply in Support of their Exhaustion-Based MSJ

In reply, Defendant argues that Plaintiff did not meaningfully address either exhaustion argument. (Doc. 49 at 1). First, Defendant contends that Plaintiff does not dispute that he failed to obtain headquarters-level review. Defendant argues that his alleged statement that he would complete the 602 paperwork was "materially different from an institutional disposition" granting

---

[4] Although Plaintiff refers to an "appeal," the record indicates he is referring to the institution-level disposition of his initial grievance, rather than a headquarters-level grievance appeal.

the grievance. (*Id.* at 2–3). Defendant further argues that, under the applicable regulations, Plaintiff was required to seek headquarters-level review because the institutional level response attached to the FAC identifies the grievance disposition as "no intervention." (Doc. 49 at 3).

Finally, Defendant argues that Plaintiff does not dispute that the grievance failed to identify Defendant or otherwise notify California Correctional Health Care Services that Plaintiff was grieving Defendant's conduct. (*Id.*).

D. <u>Plaintiff's Supplement</u>

On March 18, 2026, Plaintiff filed a sworn supplement entitled "Supplemental Information 'New Evidence' (Opposition of Summary Judgement)." (Doc. 50). Plaintiff asserts that he discovered evidence showing that he submitted a headquarters-level appeal. (*Id.* at 1).

Plaintiff states that, after he was transferred from North Kern State Prison to Wasco State Prison, he mailed an appeal to headquarters and submitted a "request for interview" to the appeals coordinator asking about the appeal's status. (*Id.*). He asserts that he "literally witnessed" the mailroom officer record the mailing "in the log book," and that mailroom staff recorded the legal mail in his CDCR 119 file. (*Id.*). Plaintiff maintains that he complied with all applicable procedures and mailed the appeal on February 18, 2024. (*Id.* at 1–2). He contends that grievance appeals are frequently lost, damaged, or delayed, and disputes K. Martin's statement that HCCAB did not receive his appeal. (*Id.*).

Plaintiff acknowledges that he initially did not state that he had appealed to headquarters. He attributes the omission to his transfer, depression, memory difficulties, and other circumstances. (*Id.* at 2). Plaintiff nevertheless maintains that further review was unnecessary because Defendant had already "granted" his grievance. (*Id.* at 1–2).

Plaintiff also submitted a February 4, 2024 GA-22 Inmate Request For Interview. In it, Plaintiff stated that he had "wrote a 602 last year around Nov. for lack of medication," but had not received it back. (*Id.* at 3). He requested that it be returned so that he could "do what's next." (*Id.*). The grievance coordinator's response identified a different grievance and provided its anticipated return date. (*Id.*). Plaintiff also attached another copy of the grievance, identical to the copy attached to the FAC. (*Id.* at 4–5).

E. Defendant's Response to Plaintiff's Supplement

On August 3, 2026, the Court ordered Defendant to respond to Plaintiff's supplement. (Doc. 56). Defendant responded on August 24, 2026, submitting a declaration from a Wasco State Prison mailroom supervisor and Plaintiff's confidential/legal-mail log for January 25 through July 11, 2024. (Doc. 57, Doc. 57-1).

Defendant states that Wasco logs all incoming and outgoing legal mail in an inmate confidential/legal-mail log. (Doc. 57 at 2). Plaintiff's log contains no entry for mail sent to HCCAB during the relevant period, and Martin confirmed that HCCAB received no appeal. (*Id*.).

Defendant additionally argues that nothing supports an inference that Plaintiff sent the appeal through regular mail. (*Id.* at 3–4). Plaintiff had used legal mail in the past to send an appeal to the CDCR Office of Appeals, and his handwritten appeal date and arguments on the grievance form do not establish that he actually mailed the appeal on that date. (*Id.*). And, in any event, Plaintiff's grievance failed to identify any alleged misconduct by Defendant. (*Id.* at 4).

The mailroom supervisor's declaration confirms that Plaintiff's legal-mail log contains no entry for HCCAB, and Plaintiff's supplemental materials do not establish that he mailed an appeal. (Doc. 57-1 at 1–5). The legal-mail log contains several legal-mail entries during the relevant period, including an April 2, 2024 letter to CDCR Office of Appeals, but none addressed to HCCAB. (*Id.* at 6).

APPLICABLE LAW

A. Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. A dispute of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to return a verdict for the non-moving party, and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden shifts to the opposing party to present specific facts showing a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The party must present evidence of specific facts, by affidavit, or admissible discovery material, demonstrating a genuine dispute. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.

The opposing party need not conclusively establish a material act in its favor; it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply Rule 56 standards to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (internal quotation marks and citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002). A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion. *Anderson.*, 477 U.S. at 252. However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In an exhaustion-based summary judgment motion, the defendant bears the initial burden of establishing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc), *abrogated in part on other grounds by Perttu v. Richards*, 605 U.S. 460, 475 (2025). If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of persuasion remains, however, with defendant. *Id.*

B. Exhaustion Under the PLRA

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion is a condition precedent to filing a civil rights claim. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The PLRA recognizes no exceptions to the exhaustion requirement, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 639. Remedies are considered unavailable when: (1) the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the scheme is "so opaque that it becomes, practically speaking, incapable of use" so that "no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

A prison's internal grievance process determines whether a grievance satisfies the PLRA exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate must exhaust available remedies, but is not required to exhaust unavailable remedies. *Albino*, 747 F.3d at 1171. "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at

hand.'" *Id*. (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). Accordingly, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). If the Court concludes that a prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal without prejudice. *See Jones*, 549 U.S. at 223–24.

The PLRA's exhaustion requirement does not apply to state law claims. *Franklin v. McDonnell*, No. 16-cv-1192-AGR-CAS, 2018 WL 6991084, at *7 (C.D. Cal. Nov. 20, 2018), *findings and recommendations adopted*, 2019 WL 161725 (C.D. Cal. Jan. 9, 2019), *aff'd* 781 F. App'x 656 (9th Cir. 2019) (Unpub. Mem.). However, California law separately requires inmates to exhaust administrative remedies before bringing claims under state law. *Wright v. State of Cal.*, 122 Cal. App. 4th 659, 664–65 (2004). A prison's internal grievance process also determines whether a grievance satisfies California's exhaustion requirement. *See id.* at 667.

C. Applicable CDCR Custody Health Care Grievance Process

The California Code of Regulations, Title 15, §§ 3999.225–3999.237 governs the health care grievance process for the California prison system. Incarcerated persons may grieve issues regarding health care policies, decisions, actions, conditions, or omissions that have a material adverse effect on their health or welfare using a CDCR 602 HC, Health Care Grievance form. Cal. Code Regs. tit. 15, §§ 3999.226(a), 3999.227(a). The health care grievance system has two levels of review: (1) health care grievances are processed at the institutional level by Health Care Grievance Offices at each institution; and (2) health care grievance appeals are processed at the headquarters level, if requested by the incarcerated person. Cal. Code Regs. tit. 15, § 3999.226(a)(1).

Section A of the CDCR 602 HC form must be filled out and submitted within 30 days of either: (1) the occurrence of the action or decision being grieved; or (2) initial knowledge of the action or decision being grieved. *Id.* § 3999.227(b)(1)–(2). Section 3999.227(f)–(g), (i)–(k) requires an inmate to follow the following procedure when submitting a grievance: (1) type or print legibly on the lines provided on the health care grievance form(s); (2) document clearly and

coherently all information known and available to them regarding the issue; (3) include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement; (4) if the patient does not have information to identify involved staff member(s), the patient shall provide any other available information that may assist in processing the health care grievance; (5) sign and date the original CDCR 602 HC form; and (6) include all necessary, or available, documents. *Id.* § 3999.227(f)–(g), (i)–(k).

Once an inmate has submitted a CDCR 602 HC, the institutional level review must be completed and returned to the inmate within 45 business days, unless processed as an expedited health grievance. *Id.* § 3999.228(i). If dissatisfied with the disposition, the inmate may appeal it by completing and signing the appeal section on the CDCR 602 HC and submitting the health care grievance package to the HCCAB via the United States Postal Service within 30 calendar days plus 5 calendar days for mailing from the date noted on the CDCR 602 HC. *Id.* § 3999.229(a). The grievance is exhausted once HCCAB completes its review. *Id.* § 3999.226(g).

MATERIAL FACTS RELEVANT TO EXHAUSTION

After reviewing the submitted evidence, the Court finds the following facts undisputed, unless otherwise noted:[5]

- Plaintiff is an incarcerated individual in the custody of the California Department of Corrections and Rehabilitation. During the relevant time period, he was housed at North Kern State Prison in Delano, California. (FAC, Doc. 10 at 1).
- Plaintiff knew how to use, and did use, North Kern State Prison's administrative remedies process. (Martin Decl. ¶ 5, Ex. A).
- Plaintiff filed one healthcare grievance related to the claims in his action: Grievance Log No. NKSP HC 23002014, dated November 8, 2023. (Martin Decl. ¶ 6).

[5] Plaintiff did not respond to Defendant's Separate Statement of Undisputed Facts as required by Local Rule 260(b). The Court may therefore deem Defendant's properly supported facts undisputed. *See* E.D. Cal. L.R. 260 (b). Nonetheless, the Court has considered the evidence in Plaintiff's verified FAC, opposition, and supplemental filing, in determining whether a genuine dispute exists.

- In that grievance, Plaintiff alleged that his Effexor prescription had been abruptly discontinued and that he experienced resulting withdrawal symptoms. (Martin Decl. ¶ 7, Ex. B).
- Plaintiff did not identify Defendant in the grievance. (Martin Decl. ¶ 7, Ex. B).
- The grievance was received at the institutional level on November 9, 2023, and the institutional-level response was completed on January 18, 2024. (Martin Decl. ¶ 7, Ex. B).
- Plaintiff filed no other grievance alleging that Defendant was responsible for discontinuing his Effexor prescription. (Martin Decl. ¶ 6).
- Defendant's November 10, 2023 clinical note states that, "I addressed his 602 healthcare appeal from November 8, 2023 in which he requested to have his psychotropic medications restarted. I explained to the patient that his 602 now appears to be a moot point since his medications had already been restarted several weeks ago. I told him that I would complete the 602 paperwork by saying that this request of his had already been granted." (Doc. 44 at 12–13).
- The institutional-level response states that Plaintiff's Effexor had been re-prescribed after he filed the grievance, but that the grievance after being "reviewed by the Centralized Screening Team . . . and was deemed not to meet the definition of staff misconduct against health care staff." (Doc. 35-4 at 23).

ANALYSIS

The Court has considered the parties; briefing, evidence, and objections. Any argument or evidence not expressly discussed has nevertheless been considered to the extent it is admissible, material, and relevant.

Defendant seeks summary judgment on two exhaustion grounds: (1) Plaintiff did not identify Defendant in his healthcare grievance as required by California Code of Regulations, title 15, § 3999.227(g); and (2) Plaintiff did not appeal the institutional-level "no intervention" disposition to headquarters-level review, as required by § 3999.226. For the reasons set forth below, the Court concludes that summary judgment is warranted on both grounds.

A. Plaintiff Did Not Identify Defendant in His Grievance

The governing California regulations in effect at the relevant time require a health care grievance to clearly identify "all information known and available" concerning the issue. Cal. Code Regs. tit. 15, § 3999.227(g). Additionally, the inmate must also "include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement." *Id.*

Plaintiff's grievance did not identify Dr. Shahbazian. (Doc. 10 at 10, Ex. 1). Nor did the version of the grievance containing a completed appeal section identify Defendant. (Doc. 50 at 3). Plaintiff does not dispute this omission or meaningfully respond to Defendant's argument that summary judgment is warranted on this ground. (Doc. 44 at 9). Nevertheless, the Court independently determines whether Defendant is entitled to judgment as a matter of law. *Baxter v. City of Hemet*, 728 F. Supp.3d 1127, 1146 (C.D. Cal. 2024).

The PLRA does not itself require a prisoner to name a prospective defendant in a grievance. Rather, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). In *Jones*, the governing grievance procedure did not require prisoners to identify particular officials; therefore, the plaintiff's failure to name a defendant did not defeat exhaustion. *Id.*

California's health care grievance regulations are different. Section 3999.227(g) requires a patient to provide all known information concerning the issue, including the name, title or position, and involvement of each staff member. This placed a procedural requirement on Plaintiff to name Defendant in his grievance. Although the regulation provides alternative instructions when a patient lacks identifying information, that provision does not apply here. Plaintiff alleges that Defendant was responsible for ensuring that his medication was prescribed and that a nurse unsuccessfully attempted to contact Defendant regarding the medication. (Doc. 10 at 3–4). The undisputed record therefore establishes that Plaintiff knew of Defendant's involvement when he filed the grievance.

Because Plaintiff knew Defendant's identity and role but did not identify him in the grievance, Plaintiff failed to comply with section 3999.227(g). His administrative remedies were

therefore not properly exhausted as to his claims against Defendant. *See Jones*, 549 U.S. at 218; *cf. Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (finding no exhaustion defect where then-applicable California regulations did not require an inmate to identify responsible staff members).

*Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016), does not compel a different result. There, the prisoner failed to name several physicians in his grievance, but prison officials addressed the grievance on the merits through every available level of review and issued a final exhaustion decision. *Id.* at 656, 658–59. The Ninth Circuit held that grievance was exhausted because prison officials elected to address the merits of the grievance rather than enforce the procedural defect. *Id.* at 658–59; *see also Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir.2011).

Here, in contrast, Plaintiff did not obtain headquarters-level review. The institutional-level response informed him that the response was not a final disposition, and appeal was available to exhaust his remedies. (Doc. 10 at 13). It also informed him that the grievance was "deemed not to meet the definition of staff misconduct against health care staff." (Doc. 35-4 at 23). Thus, Plaintiff's grievance was not fully considered on the merits through the available administrative process. Enforcing the identification requirement in these circumstances serves the exhaustion requirement's purpose of permitting the prison system to address the claim through its prescribed procedures before federal litigation.

Thus, summary judgment on exhaustion is proper on this first ground. The applicable grievance regulation required Plaintiff to identify the involved staff member, yet Plaintiff's grievance did not identify Defendant. Plaintiff also has not carried his burden to show that this omission should be excused, for example, because the administrative remedy was unavailable or because he otherwise provided sufficient information to alert prison officials to Defendant's alleged conduct. Accordingly, Plaintiff failed to properly exhaust available administrative remedies before filing suit.

B. Plaintiff Did Not Exhaust by Failing to Obtain HCCAB Review

To exhaust administrative remedies, an inmate must obtain headquarters-level review from HCCAB. Cal. Code Regs. Tit. 15, § 3999.226(g). Plaintiff does not dispute that he received no HCCAB disposition. He nevertheless argues that he was not required to appeal

because his Effexor prescription was restarted, or, alternatively, that he mailed a timely appeal on February 18, 2024. Neither contention creates a genuine dispute of material fact.

1. Plaintiff was Required to Seek HCCAB Review

Plaintiff argues that further review was unnecessary because another psychiatrist restarted his medication while the grievance was pending. He also relies on Defendant's alleged statement that the grievance would be granted and on the grievance form's markings for both "intervention" and "no intervention." (Doc. 46 at 2–3).

An inmate need not appeal a grant of relief, or a partial grant that fully satisfies the inmate. *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010). That rule does not apply here.

Plaintiff's grievance sought more than restoration of his Effexor prescription. He characterized the medication denial as negligent, stated that he intended to pursue litigation, and thus sought action concerning the conduct that caused the prescription to be discontinued. (Doc. 10 at 10). The institutional response concluded that the grievance did not meet the definition of staff misconduct. (*Id.* at 12). Moreover, Plaintiff completed Section C of the grievance form, which is used when an inmate is dissatisfied with the institutional-level response. There, he complained that the institution had not admitted or denied that his medication had been discontinued and stated that he needed that information so that "the D. Court can get involved." (*Id.* at 11.) Consequently, this is not a case where the inmate was excused from appealing his grievance because he was satisfied with the institutional level response.

The record also does not establish that Plaintiff received all the relief he sought. Although the grievance form has both "intervention" and "no intervention" marked, the attached institutional response identifies the disposition only as "no intervention." (*Id.* at 10, 12). Defendant's clinical note states he intended to complete the grievance paperwork by noting that Plaintiff's request to restart medication had been granted. (Doc. 44 at 12–13). But the institutional response separately denied relief on Plaintiff's allegation of staff misconduct. (Doc. 10 at 12).

Thus, even assuming Plaintiff received relief as to his medication, he remained dissatisfied with the response to his claim of negligence or misconduct. He was therefore

required to seek HCCAB review to exhaust his administrative remedies. *See Harvey*, 605 F.3d at 685.

2. Plaintiff Has Not Shown That He Mailed an Appeal

Plaintiff alternatively contends that he mailed an appeal to HCCAB but received no response. (Doc. 50 at 1–2). The grievance attached to the FAC includes a completed Section C dated February 18, 2024. (Doc. 10 at 10). Plaintiff also states he saw a mailroom officer log the appeal and that the mailing was recorded in his CDCR 119 file. (Doc. 50 at 1).

The PLRA requires exhaustion unless circumstances render administrative remedies otherwise "effectively unavailable." *Sapp*, 623 F.3d at 822 (quoting *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)). "When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (per curiam). Liberally construed, Plaintiff's supplement argues that Wasco State Prison failed to forward his appeal to HCCAB. The evidence, however, does not create a triable issue as to whether Plaintiff submitted an appeal.

In his opposition, Plaintiff maintained that he had no reason to appeal because the grievance had been granted. (Doc. 46 at 2–3). Only in his later supplement did he assert that he mailed an appeal. (Doc. 50 at 1–2). This position is inconsistent with his earlier sworn assertions. Although a self-serving declaration may establish a factual dispute, it does not do so when it directly contradicts the declarant's earlier sworn testimony without adequate explanation. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

Plaintiff also provides no reliable corroboration that he mailed an appeal. He submits no receipt, envelope, mail slip, witness declaration, or other documentary evidence of submission. His legal-mail log contains no entry to HCCAB on or around February 18, 2024, and a Wasco mailroom supervisor confirms that no such entry appears in the log. (Doc. 57-1 at 1–5). The log does reflect an April 2, 2024 legal mailing to the CDCR Office of Appeals. (*Id*. at 6).

Defendant acknowledges that a health care grievance appeal could have been sent through regular mail and would not have appeared in the legal-mail log. (Doc. 57 at 2–3). But Plaintiff

specifically relies on his purported observation that a mailroom officer logged the appeal. (Doc. 50 at 1). The absence of any corresponding HCCAB entry undermines that assertion. *See Scott*, 550 U.S. at 380. Here, Plaintiff's assertion that he saw a mailroom officer record the appeal in a log is contradicted by the legal-mail log and the mailroom supervisor's declaration. (Doc. 50 at 1). Defendant's response to Plaintiff's supplement agrees that legal mail is written into a log, and they attached a copy of Plaintiff's legal-mail log during the relevant timeframe. (Doc. 57-1 at 6). The log demonstrates that no mail addressed to HCCAB was submitted on or around February 18 2024, and Defendant further attached a mail room supervisor's affidavit confirming that assessment. (*Id.* at 1–5). Because Plaintiff relies on the purported logging of his appeal as proof that he submitted the appeal for mailing, the contradictory log precludes finding a genuine issue of material fact. *See Scott*, 550 U.S. at 380. The legal-mail log is therefore not conclusive proof that Plaintiff did not use regular mail, but it does not corroborate his account that the mailing was logged.

Plaintiff's remaining submissions do not establish mailing. His February 4, 2024 request for interview predates the alleged February 18, 2024 HCCAB appeal and thus cannot confirm its submission. (Doc. 50 at 3). And the completed Section C demonstrates only that Plaintiff <u>prepared</u> an appeal; it does not show that he <u>mailed</u> one. (*Id*. at 4–5).

Accordingly, Plaintiff has not raised a genuine dispute of material fact that that he submitted a timely HCCAB appeal or that administrative remedies were otherwise unavailable. Because Plaintiff did not exhaust available administrative remedies before filing suit, his Eighth Amendment claim against Dr. Shahbazian must be dismissed.

Because the Court grants summary judgment on Plaintiff's sole federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims for negligence and intentional infliction of emotional distress. *See* 28 U.S.C. § 1367(c)(3). Considerations of judicial economy, convenience, fairness, and comity favor allowing the California courts to resolve the remaining state-law claims, which the Court has not addressed on the merits. Accordingly, those claims are dismissed without prejudice.

////

Accordingly, IT IS ORDERED:

1. Defendant Shahbazian's exhaustion-based motion for summary judgment (Doc. 35) is GRANTED as to Plaintiff's Eighth Amendment deliberate-indifference claim.
2. Plaintiff's Eighth Amendment deliberate medical indifference claim is DISMISSED without prejudice for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).
3. The Court DECLINES to exercise supplemental jurisdiction over Plaintiff's state-law claims for negligence and intentional infliction of emotional distress under 28 U.S.C. § 1367(c)(3). Those claims are DISMISSED without prejudice.
4. The Clerk of Court is directed to terminate all pending motions and close this case.

Dated: September 28, 2026

Helena M. Barch-Kuchta
HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE